1573-14

ORIGINAL

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

AT AUSTIN

PD-1573-14

COURT OF APPEALS

For the FOURTEENTH SUPREME

JUDICIAL DISTRICT

At Houston

CAUSE No. 14-13-0686-CR

FILED IN
COURT OF CRIMINAL APPEALS

FEB 27 2015

Abel Acosta, Clerk

DAMON KENDRICK DOVE, Appellant

Vs.

THE STATE OF TEXAS, Appellee

PETITION FOR DISCRETIONARY REVIEW

ORAL ARGUMENT REQUESTED

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 23 2015

Abel Acosta, Clerk

## IDENTIFICATION OF PARTIES

Pursuant to Texas Rule of Appellate Procedure 68.4(a), a complete list of the names of all interested parties is provided below so the members of the Honorable Court may at once determine whether they are disqualified to serve or recuse themselves from participating in the decision of this issue.

Appellant:

Damon Kendrick Dove

Counsel:

David McClure (at trial)
1445 N. Loop West, Suite 900
Houston, Texas 77008

Michael Elliott (on appeal)
905 Front Street
Richmond, Texas 77469

Counsel for Appellee, The State of Texas:

John Healy
Fort Bend County District Attorney

Mandana Mahmouhdi (at trial)

Chad Bridges (at trial)

John Harrity (on appeal)
Assistant District Attorney
301 Jackson Street
Richmond, Texas 77469

State Prosecuting Attorney
P. O. Box 12405
Austin, Texas 78711

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES ................................................... ii, iii

INDEX OF AUTHORITIES ...................................................... vi, vii

STATEMENTS REGARDING ORAL ARGUMENT ....................... viii

STATEMENTS OF THE CASE ..................................................... 1

STATEMENTS OF PROCEDURAL HISTORY ............................... 2

STATEMENT OF THE QUESTIONS ............................................ 3

1.      Did the Court of Appeals misconstrue Rule of Evidence 103, in the determining that trial Counsel failed to preserve error by making an offer of proof, which set forth the substance of the proffered evidence pursuant to Texas Rule of Appellant Procedure 66.3 (d)?

2.      Did the Court of Appeals apply the correct standard of review for the sufficiency of evidence based on all the evidence within the record, to ensure the jury reached a rational decision?

ARGUMENTS ...................................................................... 4

# INDEX OF AUTHORITIES

## CASES:

Aschbacher v. State, 61 S.W. 3d 532 (Texas App. San Antonio 2001 ..................... 4

Bigas v. State, 177 S.W. 3d 161 (Texas App. Houston [1st Dist.] 2005) ................... 5

Bouldin v. State, 87 Tex. Cr. R. 419, 225 S.W. 555 (Tex. Cr. App. 1920) ................ 7

Cain v. State, 958 S.W. 2d 404 (Tex. Crim. App. 1997) ...................................... 8

Delware v. VanArsdoil, 475 U.S. 673, 106 S. Ct. 1431, 89 L. ed 2d 674 ................. 7

Hammer v. State 296 W.W. 3d 555 (Tex. Crim. App. 2009) ................................ 7

Johnson v. State, 23 S.W. 3d 1 (Tex. Crim. App. 2000) ..................................... 10

LaHood v. State, 171 S.W. 3d 613 (Texas App. Houston [14th Dist.] 2005) ........... 7

Lopez v. State, 18 S.W. 3d 220 (Tex. Crim. App. 2000) ..................................... vi

Love v. State, 861 S.W. 2d 899 (Tex. Crim. App. 1993) ..................................... 5

Mays v. State, 285 S.W. 3d 884 (Tex. Crim. App. 2009) dissent.......................... 5

Miles v. State, 61 S.W. 3d 682 (Tex. Crim. App. 2001) ..................................... 5

Virts v. State, 739 S.W. 2d 25 (Tex. Crim. App. 1987) ..................................... 7

Warner v. State, 969 S.W. 2d 1 (Tex. Crim. App. 1998) ..................................... 4

Young v. State, 358 S.W. 3d 790 (Texas App. Houston [14th Dist.] 2012, pet. ref"d) ...10

## STATUES AND RULES

Texas Penal Code Sec. 22.011 .................................................................... 8

Tex. R. App. P. 10.5 (b) (3) ........................................................................ 1

Tex. R. App. P. 21.2 .................................................................................. 7

Tex. R. App. P. 21.8 .................................................................................. 1

Tex. R. App. P. 33.1 .................................................................................. 4

# INDEX OF AUTHORITIES- Cont.

Tex. R. App. P. 44.2 (a) .................................................................... 7

Tex. R. App. P. 66.3 (d) ............................................................... iii, 3, 4

Tex. R. App. P. 68 ........................................................................ 1

Tex. R. App. P. 68.4 (a) ................................................................. i

Tex. R. App. P. 68.4 (d) ................................................................ vi

Tex. R. Evid. 103 .................................................................... iii, 3, 4

Tex. R. Evid. 103 (a) (2) ............................................................... 4

Tex. R. Evid. 404 (b) ................................................................... 6

Tex. R. Evid. 412 (a) (2) .............................................................. 5

## CONSTITUTIONS:

Tex. Const. Art. 1 Sec. 10 ........................................................... vi, 7

Tex. Const. Art. 5 Sec. 6 ............................................................. 10

U. S Const. Amend. 6 ................................................................. vi, 7

## STATEMENT REGARDING ORAL ARGUMENT

There is a discrepancy throughout this State concerning the correct procedure for an attorney when making an offer of proof on important issues such as admitting relevant and admissible evidence. The State Court and the Court of Appeals is either not providing guidance or incorrect guidance regarding the law which is applicable. The issues presented in this particular case request the two highest Court of this State to set precedence on the correct and concise manner in which proof is offered. The opinion to follow will hold consistently on the particular topic and be a standard for the lower Courts to follow. Because these questions present important issues which can be viewed in a different light depending on a case by case basis, Appellant request oral arguments in this case pursuant to Texas Rules of Appellate Procedure 68.4 (d). The Texas Constitution (Article 1 Section 10) and the United States Constitution (amendment 6 and 14), ensure that defendants in criminal prosecutions shall have the right to produce and have evidence admitted "when a defendant claims consent, physical evidence that sexual relations took place become moot; credibility of the parties becomes the whole question for the jury. I think it is in sex cases that juries will most often be asked to reach a verdict solely on the basis of uncorroborated testimony of a victim, and therefore I think that is in sex cases that the balancing approach will most often render evidence admissible." (Keller, J) see Lopez v. State, 18 S.W. 3d 220, 227 (Tex. Crim. App. 2000).

# IN THE

# COURT OF CRIMINAL APPEALS

# OF TEXAS

# AT AUSTIN

## PD-1573-14

## PETITION FOR DISCRETIONARY REVIEW

## STATEMENT OF THE CASE

On or about March 4, 2013, Appellant was indicted for the felony offense of sexual assault, enhanced for punishment by a prior felony conviction. (RR:8). On or about July 17, 2013, the trial court omitted relevant and admissible evidence of Sarah Albillar's lengthy mental history including prior ideations of kidnapping, rape, and pregnancy. (RR4:7, 31-32). At trial, the evidence was legally insufficient to support Appellant's conviction because there is NO evidence that Appellant used or exhibited force. (RR8:56). On July 23, 2013, a jury found Appellant guilty and assessed Appellant's punishment at confinement in the Texas Department of Criminal Justice Institutional Division, ("TDCJ-ID") for thirty-five years. (RR:68-69). On or about July 29, 2013, Appellant timely filed Notice of Appeal. On August 23, 2014, Appellant filed a Motion for new trial which was overruled by Operation of Law seventy-five days later. Tex. R. App. P. 21.8. On November 20, 2014, the Court of Appeals affirmed Appellant's conviction. On November 25, 2014, Appellant timely filed an extension of time pursuant to Tex. R. App. P. 10.5 (b) (3), which was granted. Appellant now comes before this Court and files this P.D.R. pursuant to Tex. R. App. P. 68.

1

## STATEMENT OF PROCEDURAL HISTORY

1.   On November 20, 2014, the Court of Criminal Appeals for the Fourteenth Supreme Judicial District of Houston affirmed Appellant's conviction.

2.   Appellant did not file a motion for rehearing in the Court of Criminal Appeals for the Fourteenth Supreme Judicial District of Houston and now this Appeal results.

## QUESTIONS PRESENTED FOR REVIEW

**1.** Did the Court of Appeals misconstrue Rule of Evidence 103, in the determining that trial Counsel failed to preserve error by making an offer of proof, which set forth the substance of the proffered evidence pursuant to Texas Rule of Appellant Procedure 66.3 (d)?

**2.** Did the Court of Appeals apply the correct standard of review for the sufficiency of evidence based on all the evidence within the record, to ensure the jury reached a rational decision?

## ARGUMENT AND QUESTIONS FOR REVIEW

### Question #1

Did the Court of Appeals misconstrue Rule of Evidence 103 in determining that Trial Counsel failed to preserve error by making an offer of proof, which set forth the substance of the proffered evidence pursuant to Texas Rule of Appellate Procedure 66.3 (d)?

The Court of Appeals drew a wrong inference from Rule of Evidence 103 in determining that trial counsel "never offered the complainant's mental health records into evidence," (See Judgment pg. 9) for purpose of preserving error. The Court of Appeals has viewed the record too narrowly and the law on perfecting error for review too strictly. The substance of the relevant and admissible evidence was known and apparent to the trial court when the Court stated:

- I'll reserve ruling on the objection. (RR 4:32,13)
- The entire record does not come in. (RR 4:33, 8) Reference to New Mexico Behavioral Health Inst. And Texana Medical records
- So it's not relevant as to this Physician. (RR 4:33, 16
- Discussion pertaining to in camera hearing (RR 2, 3-4)

Rule of Evidence 103 (a) (2) allows a party to claim error in a ruling since it excluded evidence and the substantial right of a party is affected. See <u>Tex. R. App. P. 33.1 (a) (1) (A)</u>; <u>Aschbacher v. State, 61 S.W. 3d 532, 538 (Tex. App. San Antonio 2001)</u>; <u>Warner v. State, 969 S. W. 2d 1, 2 (Tex. Crim. App. 1998)</u>.

4

The excluded evidence (medical records) that trial counsel sought to introduce at trial consisted of mental health records that specifically showed chronic paranoid schizophrenia, a 30 day civil commitment from an inpatient psychotic unit, and delusions of being kidnapped, abused, raped, and pregnancy. (RR 4:31, 23-25), (See attached documents). The documents would have allowed Appellant an opportunity to rebut or explain during the cross-examination of the State's witness Dr. Baptise, who was the primary care physician/psychiatrist for the Complainant. (RR 4:26). See Tex. R. Evid. 412 (a) (2); Miles v. State, 61 S.W. 3d 682 (Tex Crim. App. 2001).

The Court of Appeals erred by failing to review trial counsel's statement as a form of a concise statement to set forth the substance of the proffered evidence.

> Mr. McClure: *And I intend to introduce the psychological records in their entirety that Ms. Marcus is bringing up from Texana today (RR 4:7, 16-18).*

Love v. State, 861 S.W. 2d 899, 901 (Tex Crim. App. 1993; Mays v. State 285 S.W. 3d 884 (Tex. Crim. App. 2009) See dissent.

This offer of proof was a reasonably specific summary of the evidence offered and the relevance as apparent since trial counsel stated:

> Mr. McClure: *And if I might, your Honor, there's a consistency every time she's hospitalized. She ideates towards kidnapping, abuse, rape, and pregnancy. There's a continuation throughout her entire... (RR 4:31, 22-25)*

Biagas v. State, 171 S.W. 3d 161 (Tex. App. Houston [1st Dist.] 2005)

It would appear from the record that Appellant satisfied Rule 103 (a) (2)'s requirement and the Appellate Courts reviewing was in conflict with the Texas Court of Criminal Appeals, Mays v. State, 285 S.W. 3d 884 (Tex. Crim. App. 2009) See dissent.

5

Tex. R. Evid. 103 and a material question of law pertaining to issues of insufficiency to preserve error for appellate review. Given the subsequent colloquy between defense counsel, the State, and the trial court, it is clear that the trial court knew perfectly well that trial counsel intended to offer testimony from expert witness and Complainant about her lifetime battle with schizophrenia and her questionable mental capacity "since childhood." (RR 4:38, 12) (RR 8:34) (RR 4:42). The State acknowledged the possibility of the defense "delivering" into the Complainants own sexual history. (RR 2:6, 21-23).

> Dr. Baptise: *"The mother told me she's been having these problems since childhood." (RR 4:38, 11)*

The trial court abused its discretion by excluding the relevant and material evidence based on the State's erroneous remoteness objection (Tex. R. Evid. 404 (b)), that was not applicable due to the dated documents within the Texana MHMRA file (Exhibit A) dating from 8/8/2001 to 4/14/2011. Later, Dr. Baptise testified to her notes within the inadmissible medical file:

> Dr. Baptise: *"What I have in my notes is that she's had delusions of thinking she was pregnant, that the government was after her grandparents. Those are the two delusions I have noted in my notes. (RR 4:53, 17-20)*

The Appellant was denied the opportunity to effectively challenge the Complaint's truthfulness, bias and motive based on the mental health disorder and medication.

The Appellant challenges the violations of his constitutional right to present relevant and material evidence to confront State witness. Offering of proof burden is less rigid when excluded evidence goes generally to witness credibility; including an impairment possibly effecting credibility. (Schizophrenia) LaHood v. State, 171 S.W. 3d 613 (Tex. App. Houston [14th Dist.] 2005). Texas law and USCA require great latitude when the evidence deals with a witness's specific bias, motive or interest to testify in a particular fashion. Tex. R. App. P. 44.2 (a), Tex. Const. Art. 1 Sec. 10; U.S. Const. Amend. 6. Delware v. Van Arsdoil, 475 U.S. 673, 106 S. Ct. 1431, 89 L. ed. 2d 674. Cross examination of a State's witness to show that the witness has suffered a recent mental illness or disturbance is proper, provided that such mental illness tends to reflect upon the witness's credibility. Hammer v. State, 296 S.W. 3d 555 (Tex. Crim. App. 2009); Virts v. State, 739 S.W. 2d 25 (Tex. Crim. App. 1987); Bouldin v. State, 87 Tex Cr. R. 419, 222 S.W. 555 (Tex. Crim. App. 1920).

When the jury is asked to evaluate the credibility of a witness, one diagnosed with chronic paranoid schizophrenia and severe psychotic symptoms, its imperative the defense is given an opportunity to present a meaningful defense including relevant and material evidence.

The motion for new trial / hearing preserved the point of error on appeal adding facts and evidence not in the trial record: psychological treatment records of Sarah Albillar (Exhibit A) Tex. R. App. P. 21.2 (CR 83-84).

## ARGUMENT AND QUESTIONS FOR REVIEW

### Question #2

Did the Court of Appeals apply the correct standard of review for sufficiency of evidence based on all of the relevant evidence within the record to ensure the jury reached a rational decision?

The evidence within the record to establish the adverse findings were factually insufficient in determining guilt of sexual assault. Appellant argues a jury fails to reach a rational decision if it's centered on irrational and unreasonable evidence and testimony to support the elements of a criminal offense. Appellant challenges a conviction of Sexual Assault pursuant to Tex. Penal Code Sec.22.011

- Without the consent of the other person

- Actor compels the other person to submit or participate by the use of physical force or violence.

- Actor compels the other person to submit or participate by threatening to use force or violence against the other person and the other person believes that the Actor has the present ability to execute the threat.

The totality of the factual circumstances and credibility of testimony by Complainant is based on the irrational evaluation that a mental ill witness suffering from prolonged chronic paranoid schizophrenia should be believed beyond a reasonable doubt. Cain v. State, 958 S.W. 2d 404, 410 (Tex. Crim. App. 1997). The jury struggled on this "he said, she said" case erring in its verdict and determination that the evidence

was sufficient, although consent was possible. A positive in court/out of court identification could not be made, (RR 8:69) and positive DNA evidence did not exist. (RR 7:27). Should all these conflicts concerning the evidence be resolved by testimony from a delusional, schizophrenic Complainant who was assumed credible by the jury because evidence (medical records) were excluded by the trial court?

Clearly, the jury struggled in the "He Said, She Said" case with whether or not Appellant forced Complainant to submit to the alleged sexual assault. (See jury's note to Judge). It's apparent that the jury based their determination that the sexual encounter between Appellant and Complainant was centered on Appellants alleged threat to leave Complainant on the side of the road and not a threat of violence or force. That is not what the law prescribes. (See Texas Penal Code Sec. 22.011), (CR: 61)

The issue of Identification (though not necessary because of consent) was a non-issue at trial. When the State failed to get Complainant to identify Appellant as her attacker (RR 8:68-70), the State went as far as eliminating the jury because the Complainant was unable to identify Appellant. This is the same individual who she spent time with Appellant at the neighborhood swimming pool (RR 8:13-14) and the individual she went out to have drinks with. (RR 8:16-18). These inconsistences coupled with a complete medical record would have shown a complete disturbance of Complainants mental issues and reflected on her credibility.

The evidence is factually insufficient to show Appellant compelled Complainant to submit or participate by the use of physical or violence; or compelled Complainant to submit or participate by threatening to use force or violence against Complainant. See

9

Johnson v. State, 23 S.W. 3d 1 (Tex. Crim. App. 2000); Cain v. State, 958 S.W. 2d 404, 408 (Tex. Crim. App. 1997); Tex. Const. Art. 5 Sec. 6.

The Appellant argues the Court of Appeals erred in its determination that factual evidence existed to prove beyond a reasonable doubt that non-consensual sex occurred and physical force/violence was used by Appellant against the Complainant. The factual sufficiency analysis fails to justly consider the credibility of a schizophrenic – delusional Complainant who was portrayed as sane and competent. This would lead the jury to reach an irrational decision contrary to their rulings pursuant Young v. State 358 S.W. 3d 790, 801 (Tex. App. Houston [14th Dist.] 2012, pet ref'd.)

## PRAYER FOR RELIEF

Wherefore, PREMISES CONSIDERED, Appellant respectfully prays this Court to review the (2) reasons for granting review based on the Fourteenth Court of Appeals decision to affirm the judgment in Cause #14-13-00686 CR. The Appellant prays this Court grant discretionary review based on erroneous decisions that conflict with other State and Federal Appellate Courts and the misconstruing of Statute, Rule and Standard of Law.

Respectfully submitted,

DAMON KENDRICK DOVE
TDJC No. 1880020
Ellis Unit
1697 FM 980
Huntsville, TX 77343

11

## CERTIFICATE OF SERVICE

I, DAMON KENDRICK DOVE, certify pursuant to rules of Civil Procedure Rule 22, that

a true and correct copy of this Petition for Discretionary Review has been placed in the

United States Certified mail on this _19th_ day of _February_ , 20 _15_.


Cc:    Honorable Abel Acosta

COURT OF CRIMINAL APPEALS of TEXAS

Supreme Court Building

201 W. 14th St., Room 106, P. O. Box 12308

Austin, Texas 78711-2308

Certified Receipt No. _____


State Prosecuting Attorney

P. O. Box 12405

Austin, Texas 78711


John Healy

Fort Bend County District Attorney

301 Jackson Street

Richmond, Texas 77469


Respectfully submitted,

*Damon K Dove*

Damon Kendrick Dove
TDJC No. 1880020
Ellis Unit
1697 FM 980
Huntsville, TX 77343

12

# DECLARATION

I, Damon Kendrick Dove, TDCJ No. 1880020, presently incarcerated in the Texas Department of Criminal Justice, in Walker County, Texas at the Ellis Unit do hereby verify under penalty of perjury that the foregoing statements are true and correct and I have personal knowledge of the same on this the *19th* day of *February*, 2015. Pursuant to Texas Civil Practice and Remedies Code Section 132.001 thru 132.003.

Respectfully submitted,

*Damon K Dove*

Damon Kendrick Dove
TDJC No. 1880020
Ellis Unit
1697 FM 980
Huntsville, TX 77343

13

**Affirmed and Memorandum Opinion filed November 20, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00686-CR

### DAMON KENDRICK DOVE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 12--DCR-061181A**

## MEMORANDUM OPINION

In two issues, appellant Damon Kendrick Dove challenges his conviction of sexual assault. *See* Tex. Penal Code § 22.011. We affirm.

### I. BACKGROUND

On June 12, 2012, Deputy Steven Treece of the Fort Bend County Sheriff's Department was responding to a 911 call about a possible burglary when the complainant in this case ran up to his patrol car window and reported a sexual

assault.

The complainant subsequently gave a videotaped statement in which she stated that she met appellant at the pool earlier on the day of the offense. Appellant told her about his children and offered to give her a ride home. When appellant dropped the complainant off at her home he asked her if she wanted to watch a basketball game that night. The complainant agreed, and said that appellant picked her up later that night, and they went to a bar to watch the basketball game. After drinking beer and playing pool at the bar, appellant asked the complainant if she wanted to drive somewhere to see some deer. The complainant asked how they would see deer at night when it was dark. Appellant told her he would leave his headlights on to light the area. Appellant drove to a secluded location on a dirt road. Contrary to what he told the complainant earlier, appellant turned off the headlights as soon as he stopped the car. The complainant asked him what was happening. Appellant responded, "Get out of the car and walk home or put out." The complainant said at that moment she was terrified. The complainant described appellant's tone as demanding. The complainant was afraid to get out of the car because she did not know where she was. She was afraid appellant might kill her.

Appellant then climbed over the console into the passenger seat where the complainant was sitting, and began to take off his pants. Appellant demanded that the complainant take off her top and began to pull off her clothes. At that time the complainant was afraid appellant would continue hurting her. After penetrating her while in the front seat, appellant told the complainant to get in the back seat "or walk home." The complainant complied and climbed in the back seat. Appellant requested that she turn around with her back toward him. He was hitting her vagina at the same time as he assaulted her, which caused the complainant to lose control of her bladder. At that point the complainant grabbed her purse, pushed appellant

2

away, and fled from the car.

As the complainant was running she took off her shoes, and ran across a field. She saw a tall fence and jumped over it to get to the house. There were two children and a dog in the backyard of the house. The children went inside and the complainant went to the front door of the house asking for help. The homeowner told the complainant to go away so she ran to another house, knocked on the door, but there was no answer. She ran away from that house when she saw the sheriff's deputy responding to the burglary call.[1]

The day after the offense, appellant learned that law enforcement officers considered him a suspect in the sexual assault. Appellant phoned Detective Jarret Nethery, the investigating officer, and expressed a desire to tell his account of the night. Nethery and Detective Marshia Cox conducted and recorded a noncustodial interview with appellant. A redacted version of the videotaped interview was played for the jury.

At the beginning of the interview the detectives explained to appellant that he was not under arrest and was free to leave. According to appellant, he and the complainant met at the pool earlier in the day and he gave the complainant and her brother a ride home. Appellant asked the complainant if she wanted to go out that night, and she agreed to go to a bar to watch a basketball game. Appellant and the complainant left the bar at approximately 9:30 p.m., drove to a subdivision near where both he and the complainant lived, and parked on the side of the road. Appellant admitted that he penetrated the complainant's vagina with his penis. They moved to the back seat of the car and continued until she urinated on herself. The complainant decided to leave; appellant offered to drive her home, but the

---

[1] The homeowner of the first house misunderstood why the complainant was in his backyard, called 911, and reported a burglary.

3

complainant chose to walk home. Appellant stated they were parked for approximately 45 minutes, but the complainant never told him she did not consent to intercourse.

After appellant's interview was shown to the jury, Nethery testified to several inconsistencies in appellant's interview. First, the location that appellant said was near his and the complainant's home was actually not walking distance to either home. Second, appellant said he was parked on the side of the road, but Nethery said a car would have been detected if parked near the road.

The complainant testified at trial, and repeated the events as she told them in the videotaped interview. At trial, the complainant testified that appellant told her, "Get out of the car and walk home or take your clothes off." This differed slightly from the ultimatum the complainant repeated in the video. The complainant testified that while appellant was on top of her in the front seat of the car she did not feel she could leave. She was afraid appellant would kill her if she tried to leave. After the complainant contacted the sheriff's deputy she was transported to the hospital where she first spoke with Detectives Nethery and Cox. The next day the complainant, Nethery, and Cox found one of the complainant's shoes in the area where appellant had driven the night before. Treece found the complainant's other shoe the night of the assault when he was responding to the 911 call.

The sexual assault nurse examiner testified that she performed an examination on the complainant in which she detected abrasions and bruises consistent with the complainant jumping over a fence. The nurse also detected a .5 centimeter tear at the 6:00 position on the labia minora. She testified that this location is the most common place an injury occurs with penetration.

The nurse examiner further testified that the complainant reported the assault as follows:

4

Patient states: He — I think his name is spelled Mapon — picked me up at 7:00 p.m. We went to the bar, and he asked me if I wanted to go see some deer for a while. I thought that sounded cool, so I said okay. He drove down this dirt road and parked, and that's where it happened. He raped me. He told me in this mumbling, scary sounding voice to either put out or walk home. I was really scared, and I didn't know if he would hurt me. He got on top of me. I said, 'No.' And he said, 'Put out or get out and walk home.' He put his penis in my vagina. It hurt me so bad. It hurt my bladder so bad I peed on myself. I jumped out of the car and ran, jumped a fence, and asked for help.

The nurse concluded that the physical findings were consistent with the history given by the complainant. Appellant was convicted of sexual assault and the jury assessed punishment at 35 years in prison.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue appellant argues the evidence is insufficient to support his conviction. When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether a rational jury could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). In making this review, an appellate court considers all evidence in the record, whether it was admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *Brooks v. State*, 323 S.W.3d 893, 900 (Tex. Crim. App. 2010). We defer to the jury's responsibility to resolve any conflicts in the evidence fairly, weigh the evidence, and draw reasonable inferences. *Id.* The jury alone decides whether to believe eyewitness testimony, and it resolves any conflicts in the evidence. *Id.* In conducting a sufficiency review, we do not engage

5

in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

A person commits sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent. Tex. Penal Code § 22.011(a)(1)(A). Appellant admitted having sex with the complainant on the night of the offense. The issue before us is whether the evidence supports the jury's finding that the complainant did not consent. With regard to consent, the jury was instructed that a sexual assault is without the consent of the other person if: "(1) the actor compels the other person to submit or participate by the use of physical force or violence; or (2) the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat[.]"

Appellant argues the jury heard no evidence the complainant was forced to do anything. He argues that while the complainant was frightened, appellant's actions and words did not cause her fear.

The fact finder considers the totality of the factual circumstances in determining whether the victim consented. *Brown v. State*, 576 S.W.2d 820, 823 (Tex. Crim. App. 1978); *see also Graves v. State*, 994 S.W.2d 238, 243–44 (Tex. App.—Corpus Christi 1999, pet. ref'd) (finding evidence of implicit threat of force when defendant threatened to beat victim as he had done on at least one prior occasion); *Gonzalez v. State*, 2 S.W.3d 411, 415 (Tex. App.—San Antonio 1999, no pet.) (finding evidence of physical force when defendant laid on top of the complainant preventing her from moving).

The testimony of a victim, standing alone, is sufficient to support a

6

conviction for sexual assault. *Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Moreover, the jury is the sole judge of the credibility of the witnesses at trial. *Johnson v. State*, 23 S.W.3d 1, 6 (Tex. Crim. App. 2000); *see Hernandez v. State*, 804 S.W.2d 168, 170 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (stating "the jury had the ability to observe the witnesses carefully, to hear the fear or violence projected from each witness, and to evaluate the credibility of each witness and the overall sufficiency of the evidence on the issue of consent"). Explicit verbal threats and physical injury are not necessary to prove a defendant compelled a victim's participation. *Edwards v. State*, 97 S.W.3d 279, 291 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd)

In this case, the jury heard testimony that appellant drove the complainant to a secluded area, not the area he described in his voluntary statement. He instructed the complainant to get out of the car and walk home or "put out." The complainant testified she was afraid for her life and was afraid to get out of the car because she did not know where she was. The complainant testified that appellant struck her vaginal area with his hand so forcefully that it caused her pain.

There is nothing in the record to suggest the jury's resolution of the testimony was not reasonable. *See Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997). The complainant testified to the fear she perceived from appellant and the threats appellant used to keep her from fleeing. Viewing the evidence in a light most favorable to the prosecution, we conclude a rational trier of fact could have found beyond a reasonable doubt that appellant intentionally or knowingly caused the sexual organ of the complainant to contact his sexual organ without her consent. Therefore, the evidence is legally sufficient to find appellant guilty of sexual assault. We overrule appellant's first issue.

7

## III. EXCLUSION OF MEDICAL RECORDS

In his second issue appellant argues that relevant and admissible evidence of the complainant's mental health history should have been admitted at trial.

At trial, with regard to the complainant's mental health history, Dr. Nancy Baptiste, a psychiatrist at Texana Living Center, testified that she treated the complainant for schizophrenia. She testified that the general symptoms of schizophrenia include a loss of being in touch with reality, hallucinations, delusions, and disorganized thoughts. When Baptiste first saw the complainant, she was taking Seroquel and Haldol, antipsychotic drugs, and Cogentin, a drug which addresses side effects that may occur from some antipsychotic drugs. Baptiste testified that the only delusions of the complainant that Baptiste recorded were that she was pregnant and that the government "was after her grandparents."

During Dr. Baptiste's cross-examination, defense counsel presented her with an unidentified document and asked Dr. Baptiste whether she had reviewed the document to make her initial diagnosis of the complainant. Dr. Baptiste responded, "I can't say for sure . . . I might have." The following discussion then took place at the bench:

> MR. MCCLURE [defense counsel]: At this time, I do intend to go into that if the State has an objection —
>
> THE COURT: First off, it's a document that's not been admitted into evidence yet. It's part 4 of Texana's records — as far as the exception to the hearsay rule —
>
> MR. MCCLURE: Well, that's what I have Ms. Marcus here for.
>
> THE COURT: The entire records [sic] doesn't come in —
>
> MR. MCCLURE: Of course. Of course.
>
> THE COURT: Under the highlighted portion —
>
> MR. MCCLURE: Of course.

THE COURT: But this doctor has not testified that she used it in any diagnosis or treatment, so it's not relevant as to this physician.

MR. MCCLURE: Okay. I guess I'll just wait.

THE COURT: I'll sustain the State's objection at this point, but they're not even close to getting —

MR. MCCLURE: I understand.

As defense counsel continued to cross-examine Baptiste he showed her several unidentified documents and asked whether she had relied on those documents in her diagnosis and treatment of the complainant. Each time Baptiste answered that she could not specifically remember the complainant's treatment and that she did not rely on the documents presented to her by counsel.

Following his conviction appellant filed a motion for new trial to which he attached the complainant's mental health records. Appellant argued that had the records been admitted he would have been found not guilty by the jury. The trial court denied appellant's motion. On appeal appellant argues the trial court erred in excluding the complainant's mental health records. The State argues appellant waived error by failing to offer the mental health records into evidence.

Appellant argues that he preserved error during the conversation at the bench when the document, which the court identified as "part 4 of Texana's records," was shown to Baptiste and the trial court sustained the State's objection. Contrary to appellant's assertion, he never offered the complainant's mental health records into evidence. Appellant attempted to cross-examine Baptiste on the document, and counsel stated, "I guess I'll just wait." Appellant did not later attempt to introduce the documents either for purposes of cross-examination of Baptiste, or as an offer of proof for purposes of preservation of error. Even if the above-quoted exchange could be considered a ruling on the offer of the evidence, appellant failed to make a timely offer of proof to the trial court.

9

In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must comply with Rule of Evidence 103 by making an "offer of proof" which sets forth the substance of the proffered evidence. *Mays v. State*, 285 S.W.3d 884, 890 (Tex. Crim. App. 2009). The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. *Id.* A secondary purpose is to permit the trial court to reconsider its ruling in light of the actual evidence. *Id.*

In this case, appellant did not present the documents to the trial court until after judgment in his motion for new trial. Although such an offer serves the purpose of enabling the appellate court to review the documents, appellant did not give the trial judge an opportunity to reconsider his ruling prior to the jury's verdict. Because appellant failed to offer the evidence at trial, or make a timely offer of proof, he waived his objection to the exclusion of the medical records. *See* Tex. R. App. P. 33.1. We overrule appellant's second issue.

The judgment of the trial court is affirmed.


/s/   John Donovan
Justice


Panel consists of Justices Boyce, Jamison, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).

10



# JUDGMENT

## The Fourteenth Court of Appeals

DAMON KENDRICK DOVE, Appellant

NO. 14-13-00686-CR            V.

THE STATE OF TEXAS, Appellee

---

This cause was heard on the transcript of the record of the court below. Having considered the record, this Court holds that there was no error in the judgment. The Court orders the judgment **AFFIRMED**.

We further order appellant pay all costs expended in the appeal.

We further order this decision certified below for observance.

Type: DIAGNOSTIC REVIEW (Active Diagnoses)
Printed on 09/17/2010 at 8:28 a.m.

Case: 560932

Page: 1 of 1
Date: 08/08/2001
(Final Approved on 08/16/2001 at 10:57 a.m.)

## Texana MHMR Center
### DIAGNOSIS REVIEW FORM

**Diagnostic Axes I - IV**

**AXIS I: Clinical Syndromes/V Codes**

| ID | Description | Priority | Begin Date | End Date |
|---|---|---|---|---|
| 312.9 | DISRUPTIVE BEHAVIOR DISORD | 1 | 05/09/2001 | |
| 300.00 | ANXIETY DISORDER, NOS | 2 | 05/08/2001 | |

**AXIS II: Developmental/Personality Disorders**

| ID | Description | Priority | Begin Date | End Date |
|---|---|---|---|---|
| 799.9 | DIAGNOSIS DEFERRED | 1 | 02/06/2001 | |

**AXIS III: Physical Disorders/Conditions**

| ID | Description | Priority | Begin Date | End Date |
|---|---|---|---|---|
| | | | | |

**AXIS IV**

| ID | Description | Priority | Begin Date | End Date |
|---|---|---|---|---|
| A | PRIM SUPP GR | 1 | 02/06/2001 | |
| B | SOC ENVIRONM | 2 | 05/09/2001 | |
| C | EDCATIONAL | 3 | 02/06/2001 | |

Primary Axis        1

Axis V (GAF)        50

**Signature of Clinician**

Name: WADSWORTH, ELIZABETH, LPC
Electronically Signed

Date: 08/08/2001    Time: 10:57 a.m.    ⊙ Yes    ○ No    ○ N/A

(DIAG / 1.01 / 23-Feb-2001)

9

Name: MCMILLAN, SARAH A
Type: TREATMENT PLAN
Printed on 07/13/2011 at 4:19 p.m.
Case#: 900932
Medicaid#: 531319061
Page: 1 of 3
Date: 07/13/2011 - 10/11/2011
(Final Approved on 07/13/2011 at 4:19 p.m.)

# TREATMENT PLAN

| | | Status | Date Established | Target Date | Date Resolved |
|---|---|---|---|---|---|

**Strength 1:** Adequate Social Skills
**Strength 2:** Ability to Participate in Treatment
**Strength 3:** Family Support & Involvement

**Problem 1:** Manic symptoms      Active   12/20/2010   07/13/2012
Sarah demonstrates manic symptoms as evidenced by: elevated mood; appetite disturbance; sleep disturbance; mood swings; irritability; pressured speech; flight of ideas; grandiosity; lack of normal inhibition; distractibility.
7/13/11 pt. reports manic symptoms under control with medication

**Goal 1.1:** Achieve controlled behavior      Active   12/20/2010   08/24/2011
Sarah will achieve controlled behavior, moderate mood, more deliberative speech, and thought process.

**Objective 1.1.1:** Comply with medication regimen      Active   12/20/2010
Sarah will comply with medication regimen and report side effects of medications with no more than __1_ missed doses in a one month period for next 90 days.

    **Intervention 1:** CASEMANAGEMENT ROUTINE
    **Intervention 3:** MED TRAINING & SUPPORTS
    **Intervention 4:** PSYCHIATRIC EVALUATION
    **Intervention 5:** PHARMACOLOGICAL MANAGEMENT

**Problem 2:** Psychosis      Active   12/20/2010   07/13/2012
Psychosis is interfering in Sarah's life and is identified as being in need of change.
7/13/11 pt. reports symptoms under control with medication

**Goal 2.1:** Adequate daily functioning      Active   12/20/2010   08/24/2011
Adequate daily functioning, eating, clothing, hygiene, etc. will show that treatment interventions for psychosis are generally having a positive effect on Sarah's functioning.

**Objective 2.1.1:** Assess progress      Active   12/20/2010
Sarah will _1__ time per __month_ assess, with staff, progress being made toward achieving adequate daily functioning.

    **Intervention 1:** CASEMANAGEMENT ROUTINE
    **Intervention 3:** MED TRAINING & SUPPORTS
    **Intervention 4:** PSYCHIATRIC EVALUATION
    **Intervention 5:** PHARMACOLOGICAL MANAGEMENT

**Objective 2.1.2:** Learn/practice basic ADL's      Active   12/20/2010
We will clearly know from observation and self-report when Sarah has learned and is practicing basic activities of daily living such as cooking, cleaning, grooming, clothing, etc., despite psychosis.

    **Intervention 1:** CASEMANAGEMENT ROUTINE
    **Intervention 3:** MED TRAINING & SUPPORTS
    **Intervention 4:** PSYCHIATRIC EVALUATION
    **Intervention 5:** PHARMACOLOGICAL MANAGEMENT

**Objective 2.1.3:** Practice medication compliance      Active   12/20/2010
We will know from observation and self-report that Sarah is taking medications as prescribed for psychotic symptoms, as a step toward achieving adequate daily functioning.

# TEXANA CENTER
## NURSE PROGRESS NOTE

Server: __Karen West, LVN   1081__   Patient Name: _Alvillar, Sarah_
Name · ID#

MD: __N. Baptiste   3581__   Record Number: _986932_
Name · ID#

Service Date: _4-14-11_

| SVC CODE | START TIME | STOP TIME | LOC * | APPT TYPE |
|----------|-----------|-----------|-------|-----------|
| 180 | 1127 | 1132 | C | 1 |
| | | | | |
| | | | | |

APPT TYPE 1. Scheduled 2. Unscheduled 3. Cancel 4. No Show   LOC* J=Jail/Inmate

B/P _99/78_   P _105_ Weight _157_# Height _68"_ BMI _24.2_

MD Orders Noted: ☑Yes ☐ No
Verbal Medication Education with Patient/LAR: ☑Yes ☐ No
Voiced Understanding? ☑Yes ☐ No

Medication Education/Written Information given out: ☐ Yes ☑No

☐ RX given to Patient/LAR ☐ Faxed ☑Sent to Texana Pharmacy To ☑Hold ☐ Fill
☐ Called to Patient's Pharmacy Where called: _____

☐ Injection ☐ Lab ☐ EKG Scheduled? Date: _____

☐ Referred outside for EKG

☐ Injection Today: _____   Dosage: _____
Site: _____ Patient Tolerated Procedure? ☐ Yes ☐ No
Next Injection Scheduled for: _____

☐ Lab Obtained Today: Sample collected for: _____
Site Obtained: _____ Patient Tolerated Procedure? ☐ Yes ☐ No

☐ EKG Performed Today: ☐ Results Normal   ☐ Results Abnormal ☐ Sent to
Cardiologist for reading or ☐ Referred to PCP

Comments/Observations: _Pt in c̄ (M) med eval. Pt polite, cooperative_

Nurse Signature/Title: _Karen West_

Next Scheduled MD appointment: _6 wks_

Updated March 2008

NEW MEXICO BEHAVIORAL HEALTH INSTITUTE AT LAS VEGAS

FOURTH JUDICIAL DISTRICT COURT
COUNTY OF SAN MIGUEL
STATE OF NEW MEXICO

ENDORSED
Fourth Judicial District Court
San Miguel, Mora & Guadalupe

JUL 2 2 2010

Fred A. Sena
District Court Clerk
RLR
Deputy Clerk

IN THE MATTER OF

ALBILLAR, Sarah

NO. D-412-SI-02010-00171 (S)

## ORDER FOR APPOINTMENT OF A TREATMENT GUARDIAN

THIS MATTER came before this Court upon the Petition of the Department of Health, New Mexico Behavioral Health Institute. The matter was heard by this Court. Both parties were represented by counsel. The Court being fully advised in the premises finds:

The Respondent is not capable of making her own treatment decisions, as she is incapable of informed consent.

IT IS THEREFORE ORDERED that in accordance with NMSA 1978 §43-1-15 Barbara Fernandez is appointed Treatment Guardian for the purpose of making substitute treatment decisions for the Respondent.

These treatment decisions are limited to:

Provisions of NMSA 1978, §43-1-15 including Psychotropic Medication and duties regarding release of information as provided in NMSA 1978, §43-1-19H.

IT IS FURTHER ORDERED that the Treatment Guardian shall make the decision on behalf of the Respondent as to whether or not the Respondent shall accept treatment on the basis of her decision as to whether or not the treatment appears to be in the Respondent's best interest and is the least drastic means for accomplishing the treatment objective.

The Treatment Guardian shall serve in this capacity as Treatment Guardian for the Respondent for a period of time not to exceed one (1) year from the date of entry of this Order.

IT IS ORDERED FURTHER that the previous Order of this Court appointing Victoria Doom to represent herein is reaffirmed hereby, and an attorney's fee for services in this case shall be granted as per the contract between Respondent's attorney and the Attorney to the Administrative Office of the Court.

_____
DISTRICT JUDGE

_____
ATTORNEY FOR PETITIONER

__ By Court Order

_____
ATTORNEY FOR RESPONDENT

By Stipulation of the Parties

135

# THE NEW MEXICO BEHAVIORAL HEALTH INSTITUTE at Las Vegas

3695 Hot Springs Boulevard
Las Vegas, New Mexico 87701
(505) 454-2100

## IDENTIFYING DATA:

**PRESENTING COMPLAINT:** Psychotic behavior.

**HISTORY OF PRESENT ILLNESS:** This is the first New Mexico Behavioral Health admission for this 23-year-old Caucasian female transferred from Eastern New Mexico Medical Center in Roswell, New Mexico. The patient is transferred for reasons of continued mental health attention and for her protection.

**LABORATORY DATA:** Laboratory studies accompanying the patient indicates the following: On July 5, 2010, her serum HCG was negative. The comprehensive medical panel is negative. The CBC is negative. The EKG unremarkable with QTC 243 ms.

## PAST HISTORY

Past Adult Illnesses: Hypothyroidism only.

Medications: Synthroid 50 mcg and psychiatric medication.

Surgeries: A recent therapeutic abortion according to the patient. It should be pointed out the patient is not fully reliable, believed to be a reliable historian at this time.

Allergies: To OXYCODONE and HYDROCODONE.

Injuries/Trauma: Left thumb repair some years ago with full function regain.

Childhood Illnesses: Usual.

Substance Use History: In her lifetime has included tobacco, illicit drugs and alcohol.

Social and Personal History:

History of schooling/education: Near completion of her high school diploma. However, she left school sometime before graduation.

Military History: No military experience.

Job history: No significant job history.

Financial status: No financial disability income.

Guardianship Status: No guardianship issues.

Legal problems: No legal problems.

Personal History: The patient presently lives in Portales with her boyfriend.

Family Medical History: Both parents are well and working. No significant family medical problems are known to this patient. The patient states that she does have siblings, but is unclear about how many. The patient has always been single and childless.

---

July 15, 2010
TBS1

ALBILLAR, SARAH
MR: 43941

HISTORY AND PHYSICAL

137

## PSYCHIATRY SECTION

**DISCHARGE DIAGNOSIS**

Psychiatrist: Sean M. Killoran - Locum – 9/10/2010

Axis I:   Chronic Paranoid Schizophrenia

**(See Medical Section for Axis III Diagnosis)**

Axis II:   no diagnosis

**Reason for Admission:** *(Brief description of circumstances which brought patient to the facility).*

Ms. Albillar was referred on a thirty day court commitment from Roswell's Sunrise unit. She was admitted there on 6/15 from Portales with "severe psychotic symptoms." Apparently, she was living with her boyfriend in Portales when they were evicted. The grandmother came to pick up the patient and return her to family care in Albuquerque. Paranoid, the patient jumped out of the car. She was delusional, stating that she was a queen, kidnapped, and abused. She was reportedly not taking medications for at least a year. She also apparently refused medication for much of her stay at Sunrise.

Ms. Albillar presented to NMBHI as pleasant and cooperative and, as she got more comfortable, very psychotic. She was oriented to person and place. She says she is "Royal Blood of God." She stated that her grandparents have been plotting to kill her since she was born and that is why she jumped out of the car. She was quite hard to follow at times due to her loose associations and poorly organized thought.

**Assessment and findings:** *(Brief description of diagnostic assessments and findings including labs and mental status exam.)*

This 23 y/o single female was admitted to NMBHI on 7/15/10 on a 30 day civil commitment from an inpatient psychiatric unit in Roswell, NM. She was initially detained and hospitalized there after attempting to leap from a moving auto driven by her grandmother. There is a paucity of premorbid psychiatric history although the patient was under considerable stress related to homelessness after being evicted with her boyfriend from there rented apartment. On admission she was preoccupied with grandiose and persecutory delusional ideas. Treatment with haldol, which was started in Roswell, was continued. The initial oral formulation was augmented with haldol deconoate. Seroquel was added at bedtime.

**Brief course of hospitalization and treatment response:**

The more florid aspects of her delusions and primary process thinking slowly resolved. However, she continued to maintain a rather fixed delusion of pregnancy for most of her hospitalization which was uneffected by the objective findings of negative urinary and serum pregnancy tests. The origenal behaviors which precipitated her hospitalization were rationalized with no insight gained and denial and projection, characteristic of paranoia, persisted as primary ego defenses. Given this lack of insight it was deemed prudent to continue haldol deconoate following discharge.

**Condition on discharge, follow-up recommendations and relapse prevention plan:**

At the point of discharge the patient's psychotic symptomatology had resolved. However, some elements of a formal thought disorder persisted and though not overtly delusional she remained somatically focused. Her mother agreed to provide care and shelter for her and will transport her to the family home in Texas were follow up outpatient psychiatric treatment at a mental health clinic near Houston, Tx. will be arranged.

**DISCHARGE MEDICATIONS:**

Medication:   haldol
Dose:   10 mg bid

Was medication supply sent with Patient?   Yes     *(If yes)*, No. of Days:   10
Was patient given a Prescription?   Yes    *(If yes)*, No. of Days:   30     No. of Refills: 0

Medication:   cogentin
Dose:   1mgm bid

Was medication supply sent with Patient?   Yes     *(If yes)*, No. of Days:   10
Was patient given a Prescription?   Yes    *(If yes)*, No. of Days:   30     No. of Refills: 0

Medication:   seroquel
Dose:   100mg hs

Was medication supply sent with Patient?   Yes     *(If yes)*, No. of Days:   10
Was patient given a Prescription?   Yes    *(If yes)*, No. of Days:   30     No. of Refills: 0

Medication:   haldol deconoate
Dose:   100mg IM q 1month

Was medication supply sent with Patient?   No     *(If yes)*, No. of Days:   N/A
Was patient given a Prescription?   Yes    *(If yes)*, No. of Days:   30     No. of Refills: 0

Under the law

Are there other ways to compel a person to submit, or threaten to submit, to the penetration of the female sexual organ of another person without that persons consent other than physical force or violence or the threat thereof?

An Example in question might include threatening to leave a person stranded in the dark in the middle of nowhere.

Or is actual physical force required?

This is a decision for the Jury.

**FILED**

JUL 19 2013   KH

AT _8/5_ _P_ M.

Clerk District Court, Fort Bend Co., TX

Wayne Pruitt

Jury Foreman

Clerk District Court, Fort Bend Co., TX

12-DCR-061181A
JUQF
Jury Questions
2607040

mon K. Dove 1880020
is Unit
97 FM 980
ntsville, Texas 77343

7013 2530 0000 6968 5981

**CERTIFIED MAIL**™

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

Abel Acosta, Clerk
Court of Criminal Appeals
Supreme Court Building 201 W. 14ᵗʰ St., Room 106
P. O. Box 12308
Austin, Texas 78711-2308

SCREENED BY
U.S. MARSHALS



UNITED STATES
POSTAL SERVICE

1000

78711

U.S. POSTAGE
PAID
HOUSTON, TX
77002
FEB 19, '15
AMOUNT
$0.24
0003031-06